IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KRISTEN SCHULZ,<br><br>Plaintiff,<br><br>v.<br><br>STORYLINES GLOBAL INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 2:24-cv-00055-JNP-JCB<br><br>Chief District Judge Jill N. Parrish |

Before the court is plaintiff Kristen Schulz's objection to Magistrate Judge Jared C. Bennett's Report and Recommendation. For the reasons explained herein, the court OVERRULES Schulz's objections and ADOPTS Judge Bennett's Report and Recommendation. Dkt. No. 141. The court GRANTS Storylines's motion for extension of time *nunc pro tunc*. Dkt. No. 145. The court GRANTS Storylines's motion for summary judgment, Dkt. No. 131, and DENIES Schulz's motion for summary judgment. Dkt. No. 130.

## BACKGROUND

In January 2022, plaintiff Kristen Schulz entered into a deposit agreement with defendant Storylines Global Inc. for a 24-year lease on the *MV Narrative*, a yet-to-be-built residential cruise ship. Dkt. No. 130, at 7. Schulz paid a refundable $10,000 deposit for the 24-year lease on *MV Narrative* and later paid a non-refundable $35,000 fee to join the "Founders Circle" program. *Id.* at 7–8. Membership in the Founders Circle program afforded Schulz the right to exercise an option for an "outright purchase" of her cruise-ship residence. *Id.* at 9. Schulz identifies an FAQ page from Storylines's website indicating that owners would be permitted to "roll their holding" over

to another ship in the Storylines fleet at the end of the *MV Narrative*'s life. *Id.* at 5. She further claims that Storylines distinguished its "outright purchase" option from its lease offerings in both its marketing materials and its direct communications with her. *Id.* at 3–7. Additionally, Schulz identifies communications with Storylines representatives suggesting that any payments would be held in escrow and would not be used for the construction of the ship. *Id.* at 6–7.

The second amended complaint sets forth six claims. *See* Dkt. No. 84. First, Schulz alleges that Storylines breached the Founders Circle agreement when Storylines provided her with an agreement package that provided only an option for a life-of-vessel lease rather than an outright purchase. Dkt. No. 130, at 26–27. And by failing to hold her funds in escrow, Schulz claims that Storylines committed an additional breach of its Founders Circle agreement. *Id.* at 28–29. Schulz further claims that Storylines breached the implied covenant of good faith and fair dealing as it relates to both the alleged revocation of her purchase option and failure to hold funds in escrow. *Id.* at 29–30. Her final claims for fraud and fraudulent concealment allege that Storylines never intended to offer an outright purchase option or to hold her funds in escrow. *Id.* at 30–36.

To calculate her damages, Schulz first identifies the purchase option price from her Founders Circle agreement: $1,621,984. *Id.* at 37. She then identifies the "market price" as Storylines's list price for a life-of-vessel lease of her unit—number 8115—at the time of the alleged revocation: $1,858,978. *Id.* Because Schulz argues that the Founders Circle agreement provided her with the right to purchase outright both the residence on the *MV Narrative* and a residence on a subsequent vessel, she multiplies this figure by two. *Id.* at 37–38. Her total requested damages of $2,140,972 thus represent the market price of cabins on two vessels, minus her purchase option price, plus a credit for the $45,000 she has paid so far. *Id.* Schulz also seeks

punitive damages, an order requiring that Storylines hold her funds in escrow, as well as pre- and post-judgment interest. *Id.* at 38–39.

Storylines disputes Schulz's interpretation of the Founders Circle agreement. Storylines argues that it never made any contractual promises regarding ownership or escrow obligations. Dkt. No 139, at 12. Storylines denies that the Founders Circle agreement provided Schulz with the right to exercise an option for outright purchase; it instead argues that the agreement included a "right to purchase . . . contingent on executing further written agreements spelling out what the purchase consisted of." *Id.* at 7. Storylines also disputes any escrow obligations, claiming instead that any communications regarding escrow are superseded by the deposit agreement's integration clause.[1] According to Storylines, the maximum damages to which Schulz is entitled are $10,000, the amount of her refundable deposit. *Id.* at 21. Finally, Storylines argues that Schulz's requested relief—specific performance of the alleged escrow obligation, punitive damages, and pre- and post-judgment interest—are unavailable. *Id.* at 21–22.

The parties filed initial cross-motions for summary judgment in early 2025. Dkt. Nos. 85, 109. Judge Bennett issued a Report and Recommendation, in which he recommended that both motions should be denied. Dkt. No. 122. This court adopted that Report and Recommendation in its entirety. Dkt. No. 126. The parties have since conducted additional discovery, including depositions of Schulz and Dick Rosman, Storylines's chairman. Dkt. Nos. 135, 130-1. The parties filed a second set of cross-motions for summary judgment in late 2025. Dkt. Nos. 130, 131.

---

[1] Although the agreement concerning Schulz's $10,000 deposit for the 24-year lease contains an integration clause, the Founders Circle agreement does not. Storylines nevertheless repeatedly argues that the clause from the deposit agreement applies with equal force to the Founders Circle agreement. *See* Dkt. No. 139 *passim*.

On August 5, 2026, Judge Bennett issued a Report and Recommendation regarding this second round of cross-motions. Dkt. No. 141. He recommended that this court grant Storylines's motion for summary judgment, deny Schulz's motion for summary judgment, and dismiss with prejudice all of Schulz's claims. *Id.* The report instructed parties that they were required to file any objections within fourteen days and that failure to object might constitute waiver of any objections. *Id.* at 17. Schulz filed an objection on August 17. Dkt. No. 142. The court ordered Storylines to respond to Schulz's objection by August 31. Dkt. No. 143. Storylines responded to Schulz's objection on August 31. Dkt. No. 144. Also on August 31, Storylines filed a motion for extension of time *nunc pro tunc*, seeking to retroactively extend the deadlines applicable to its motion for summary judgment and its opposition to plaintiff's second motion for summary judgment.[2] Dkt. Nos. 131, 139. The court ordered that Schulz respond to this motion by September 8, 2026, Dkt. No. 148. Schluz responded on September 4, 2026. Dkt. No. 149.

**LEGAL STANDARD**

Under 28 U.S.C. § 636(b)(1)(C), the court "shall make a de novo determination of those portions of the report . . . or recommendations to which objection is made." Schulz objected to the R&R for the following reasons:

---

[2] The amended scheduling order called for motions for summary judgment to be filed by December 15, 2025. Dkt. No. 129. Storylines's motion for summary judgment was filed late at 12:24 a.m. on December 16, 2025. *See* Dkt. No. 131.

The amended scheduling order called for responses to motions for summary judgment to be filed "no later than two weeks after the filing of the motions." Dkt. No. 129. Storylines's response to Schulz's motion for summary judgment was filed on December 29, 2025. Dkt. No. 139. This date was two weeks after its *own* motion was filed, but four weeks after Schulz's motion was filed on December 1, 2025. Dkt. No. 130.

The court resolves the parties' scheduling dispute in this order.

> (1) it improperly considers two untimely filings by Defendant without analyzing all four factors necessary to find excusable neglect, (2) treats undisputed facts as if they were mere allegations, (3) does not apply the *Bitzes* damages standard for revocation of an option contract, (4) fails to recognize that Plaintiff did allege a duty to disclose unknown information based upon superior knowledge[,] and (5) bars the fraud claims regarding Defendant's failure to hold Plaintiff's funds in escrow based on the economic loss rule without determining whether Defendant's assurances made to Plaintiff prior to contracting are incorporated into the written agreement.

Dkt. No. 142, at 1–2. The court reviews those portions of the report and recommendation de novo.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). A fact is material if it pertains to an element of a claim or defense. *Id.* at 248. Whether there is a genuine issue for trial depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). Moreover, the court must liberally

construe pro se pleadings, yet it cannot assume the role of advocate for the pro se litigant. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).[3]

## ANALYSIS

The court addresses each of Schulz's objections in turn.

### I. THE REPORT AND RECOMMENDATION PROPERLY CONSIDERED DEFENDANT'S FILINGS.

Schulz first objects that the Report and Recommendation "improperly considers two untimely filings by Defendant without analyzing all four factors necessary to find excusable neglect." Dkt. No. 142, at 1. Apparently in response to this objection, Storylines filed a motion for extension of time *nunc pro tunc* alongside its response to Schulz's objection. Dkt. No. 145. In this motion, Storylines argues that its opposition to plaintiff's second motion for summary judgment was timely based on its construction of the scheduling order and that the 25-minute delay in the filing of its own motion for summary judgment was properly regarded by Judge Bennett's Report and Recommendation as non-prejudicial. *Id.* at 1–2. In response, Schulz argues that Storylines's repeated failures to comply with discovery deadlines forecloses Storylines's argument that it acted in good faith. Dkt. No. 149, at 2. She further argues that the amended scheduling order was clear and that she is prejudiced by the consideration of the untimely filings. *Id.* at 8–12.

[3] The Report and Recommendation noted that because Schulz is an attorney, the court is not required to liberally construe her pleadings and other filings. *See* Dkt. No. 141, at 1 n.2 (citing *In re Hook*, 816 F. App'x 269, 270 (10th Cir. 2020)). Although Schulz signs her pleadings with her Texas Bar number, she notes that she is an inactive member. *E.g.*, Dkt. No. 142, at 16. Given her inactive license, this court elects to liberally construe her pro se arguments on this de novo review. *See Hattrup v. United States*, 845 Fed. App'x. 733, 735 n.2 (10th Cir. 2021) (unpublished) (affording liberal construction to a formerly licensed attorney's pro se arguments on appeal).

Courts may extend time for parties to act "on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B). Four factors govern this analysis: (1) "the danger of prejudice" to the nonmoving party; (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within reasonable control of the movant;" and (4) "whether the movant acted in good faith." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). The third factor, which considers fault in the delay, is the most important. *Id.*

A. *Defendant's Opposition to Plaintiff's Second Motion for Summary Judgment Is Deemed Timely.*

The first filing at issue is Storylines's memorandum in opposition to plaintiff's second motion for summary judgment. Dkt. No. 139. The amended scheduling order required any responses to motions for summary judgment to be filed no later than two weeks after the filing of "the motions." Dkt. No. 129. Counsel for Storylines filed a declaration explaining that he read this deadline as fixing a single date for responses. Dkt. No. 146, at ¶ 4. Despite the reasonableness of the mistake, however, the court agrees with Schulz that the filing was late. The court nevertheless finds that the excusable-neglect factors favor granting Storylines's motion as to this filing.

First, the court finds that there is at most minimal prejudice to Schulz. She has not demonstrated how she was prejudiced beyond her being required to respond to additional motions. *See* Dkt. No. 149, at 11–12. Additional filings are not the type of prejudice contemplated by this factor. *Cf. Integrated Bus. Plan. Assocs., Inc. v. Operational Results, Inc.*, No. 2:22-CV-00733-JNP-CMR, 2024 WL 4884447, at *2 (D. Utah Nov. 25, 2024) (finding that a party's having to conduct additional depositions did not support a finding of prejudice). Second, the two-week delay did not appear to have any impact on the proceedings. Third, Storylines has provided a reasonable

explanation of its construction of the scheduling order. *See* Dkt. No. 146 (explaining counsel's understanding of the scheduling order). And fourth, although this is not the first time that counsel has run into issues with its scheduling, there is no evidence that this delay was in bad faith.

The court therefore grants Storylines's motion for extension of time *nunc pro tunc* as to its memorandum in opposition to plaintiff's second motion for summary judgment. Dkt. No. 139. That motion is deemed timely.

B. *Defendant's Motion for Summary Judgment Is Deemed Timely.*

The second filing at issue is Storylines's motion for summary judgment. Dkt. No. 131. Here, Storylines only argues that it experienced a technical difficulty with the CM/ECF filing process. Dkt. No. 145, at 4. The court finds that the excusable-neglect factors support granting Storylines's motion as to this filing as well.

First, for the same reasons as above, there was no prejudice to Schulz. Second, the delay here was fewer than thirty minutes and did not impact the proceedings. Third, Storylines has provided an adequate explanation of its technical difficulties. *See* Dkt. No. 146, at ¶¶ 8–10 (detailing the delay). Finally, there is no evidence that this transmission delay was in bad faith.

The court therefore grants Storylines's motion for extension of time *nunc pro tunc* as to its motion for summary judgment. Dkt. No. 131. That motion is deemed timely.

For these reasons, Schulz's first objection is overruled.

## II. THE REPORT AND RECOMMENDATION PROPERLY CHARACTIERIZED THE OPERATIVE FACTS.

In her second objection, Schulz argues that the Report and Recommendation "treats undisputed facts as if they were mere allegations." Dkt. No. 142, at 1. In support of this objection, Schulz identifies various points where, rather than making clear that certain facts are undisputed,

the report frames those facts as having been merely alleged. *Id.* at 5–6. The court holds that any framing of the facts as having been alleged by one party or another is immaterial to the outcome of the Report and Recommendation. Judge Bennett carefully recounted the dispute, and the court agrees with his description of the operative facts. Accordingly, Schulz's second objection is overruled.

## III. THE REPORT AND RECOMMENDATION CORRECTLY CONCLUDES THAT PLAINTIFF FAILS TO ESTABLISH DAMAGES.

Schulz next objects that the Report and Recommendation fails to apply the *Bitzes* damages standard for revocation of an option contract. Dkt. No. 142, at 1. This damages standard, set forth by the Utah Supreme Court in *Bitzes v. Sunset Oaks, Inc.*, sets the measure of damages for repudiation of real-estate option contracts at "the difference between the market price and the contract price at the time of the breach." 649 P.2d 66, 71 (Utah 1982).

Schulz argues that the Report and Recommendation failed to apply this standard when it concluded that "[a] jury could not calculate, without speculating, the amount of damages owed to Ms. Schultz based upon the revocation of an option to buy a residence on a cruise ship that does not exist." Dkt No. 141, at 13. The same is true, the report continues, "for the value of a residence on subsequent Storylines vessel slated to sail sometime in the 2080s." *Id.* In her objection, Schulz argues that her damages are not speculative but are instead "based upon Defendant's price lists for the exact cabin at issue." Dkt. No. 142, at 8. But that is precisely Schulz's problem: Schulz has provided no evidence of the market value of a cruise-ship cabin that one might *own* rather than *lease*. In fact, as the sole basis for her alleged damages, Schulz "uses Defendant's market price *of the LOV lease* for the first cabin" as her assumed market value for *outright ownership* of the cabin. Dkt. No. 142, at 16; *see* Dkt. No. 85, at 36 n.126 (explaining that "[f]or the sole purpose of

assigning minimum market value," plaintiff "appl[ies] the LOV lease market price as an indicator of minimum market value"); Dkt. No. 142, at 10 (identifying the market price used in damages calculations as "the market price of an LOV *lease*") (emphasis added).

Yet Schulz's entire breach-of-contract claim hinges on the alleged distinction between a life-of-vessel lease and outright ownership of a cruise cabin. *See* Dkt. No. 84, at ¶¶ 104–08. She repeatedly emphasizes that the foundation of the breach is Storylines's "revok[ing] Plaintiff's option for outright purchase and proposing an Agreement Package that offers only the option to enter into two very different, and much less valuable, leases." Dkt. No. 84, at ¶ 104. The Utah Supreme Court has explained that, although "the fact that the evidence upon which a court awards damages is sparse is no reason to deny all recovery for a wrong," "an award based on *total lack of evidence cannot be sustained*." *Terry v. Panek*, 631 P.2d 896, 898 (Utah 1981) (emphasis added).

Here, the evidence is not just sparse but entirely absent; the court therefore overrules Schulz's third objection.

## IV. THE REPORT AND RECOMMENDATION CORRECTLY CONCLUDES THAT PLAINTIFF'S FRAUD CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE.

In her fourth objection, Schulz argues that the Report and Recommendation incorrectly concludes that her fraud claims are barred by the economic loss rule. The Report and Recommendation concludes that the rule bars Schulz's claims because "the dispute centers on the terms of the contract, and Storylines owes no independent duty to Ms. Schulz other than the duties that arise from the two contracts between the parties." Dkt. No. 141, at 14. In response, Schulz objects that the Report and Recommendation "fails to recognize that Plaintiff did allege a duty to disclose unknown information based upon superior knowledge." Dkt. No. 142, at 2. According to Schulz, Storylines possessed superior knowledge that "(1) it internally defined 'outright purchase'

as a lease at the time it marketed and sold the term as an ownership interest, and (2) it had no intention of holding Plaintiff's funds in an escrow account at the time it told her it would do so." Dkt. No. 142, at 12.

The economic loss rule bars parties from asserting claims in tort when a conflict solely concerns the subject matter of a contract between the parties. *See HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 196–97 (Utah 2018). Tort claims entirely premised on breaches of contractual duties may not proceed "*absent an independent duty of care* under tort law." *KTM Health Care Inc. v. SG Nursing Home LLC*, 436 P.3d 151, 169–70 (Utah App. 2018) (emphasis in original).

A. *Schulz Has Not Established Any Duties Independent of the Contract.*

The threshold question to determine whether the economic loss rule applies is whether a party "owes duties that exist independent from its contractual duties . . . ." *HealthBanc Intl., LLC v. Synergy Worldwide, Inc.*, 208 F. Supp. 3d 1193, 1199 (D. Utah 2016). This is a question of law. *Id.* To determine whether such a duty exists, Utah courts "focus on the nature of the duties existing between the parties, and specifically on whether the duties existing between the parties arise as a result of the parties' contract or arise from other non-contractual sources." *KTM Health Care Inc.*, 436 P.3d at 170. In addition to individuals with assumed fiduciary duties, "such as real estate agents or real estate appraisers, . . . certain relationships that involve disparities in knowledge, sophistication, or bargaining power may create common-law fiduciary duties on the part of the advantaged party." *HealthBanc Int'l*, 208 F. Supp. at 1199 (citing *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286) (Utah 2006)).

Schulz argues that Storylines's alleged superior knowledge gives rise to this independent duty. *See* Dkt. No. 142, at 11; Dkt. No. 130, at 34–36. In support of this argument, she points to

*Yazd* for the proposition that "Utah law imposes a duty to disclose where a party possesses superior knowledge of facts not reasonably available to the other party and knows the other party is acting in reliance on materially incomplete information." Dkt. No. 142, at 11. The holding of *Yazd*, however, was "that a developer-builder may owe his buyer a duty to disclose information known to him concerning real property . . . *when that information is material to the condition of the property purchased by the buyer*." *Yazd*, 143 P.3d at 289 (emphasis added). Storylines's alleged superior knowledge regarding its internal definition of "outright purchase" and its intent not to hold Schulz's deposit in escrow are not fairly characterized as information material to the *condition* of real property; *Yazd* therefore does not control. The information that Schulz claims Storylines withheld consists of its understanding of contractual terms and its intent to hold her funds in escrow; these are not the types of facts that give rise to the superior knowledge argument Schulz advances.

Beyond this "superior knowledge" argument, the court finds no other basis for a non-contractual duty between the parties. The court therefore holds that Schulz has failed to establish that Storylines owed her a duty independent of the contract.

B. *The Economic Loss Rule Bars Schulz's Fraud Claims.*

Having established that the duties the parties owe one another are limited to their contractual relationship, the court next addresses whether Schulz's claims are barred by the economic loss rule. The Report and Recommendation concluded that, because Schulz's fraud claims arise out of the disputed meaning of "outright purchase," "the appropriate mechanism for litigating this dispute is contract law, not tort." Dkt. No. 141, at 16. This court agrees. At its core, this dispute concerns the contract that Schulz claims Storylines breached by offering her a life-of-vessel lease rather than outright ownership of a cruise cabin. The court therefore holds that Schulz's

fraud claims relating to the meaning of "outright purchase" are "quintessential breach of contract allegations" that cannot proceed simply because they are reframed in tort. *KTM Health Care Inc*, 436 P.3d at 172.

The court therefore overrules Schulz's fourth objection.

## V. THE REPORT AND RECOMMENDATION CORRECTLY CONCLUDES THAT SCHULZ'S ESCROW-RELATED FRAUD CLAIMS FAIL FOR WANT OF DAMAGES.

Schulz finally argues that the Report and Recommendation improperly disposes of her escrow-related fraud claim "without determining whether Defendant's assurances made to Plaintiff prior to contracting are incorporated into the written agreement." Dkt. No. 142, at 2. She argues that the Report and Recommendation failed to determine whether Storylines's alleged escrow obligations were incorporated by reference into the Founders Circle agreement. *Id.* at 13. But the Report and Recommendation did not make this determination because it separately held that Schulz fails to establish damages for any escrow-related claims. *See* Dkt. No. 141, at 12 ("Ms. Schulz makes no showing that Storylines' alleged failure to hold her funds in escrow caused her any harm beyond her bald assertion that 'her funds are not protected and are at risk.'"); *id.* at 15–16 ("Ms. Schulz has not established that she suffered non-speculative damages related to her escrow claims."). Schulz objects that by failing to put her funds into escrow, Storylines has placed those funds at heightened risk of loss should it go bankrupt. Dkt. No. 142, at 14. As the Report and Recommendation explained, however, Utah law requires actual damages (not just fear of potential future damages) for both fraud and breach of contract claims. *See* Dkt. No. 141, at 12, 15; *Stevens-Henager Coll. v. Eagle Gate Coll.*, 248 P.3d 1025, 1033 (Utah App. 2011); *Carlton v. Brown*, 323 P.3d 571, 582 (Utah 2014).

To the extent Schulz seeks specific performance compelling Storylines to hold her funds in escrow, such a claim is foreclosed by the indefiniteness of the contract terms Schulz seeks to enforce. To order specific performance of a contract, Utah law requires that the terms of the agreement be reasonably certain and definite such that a court may delineate the intent of the parties. *See Reed v. Alvey*, 610 P.2d 1374, 1377 (Utah 1980). Schulz has put forth evidence of a Storylines representative telling her that "[a]ll funds will be held in an Escrow account and will not be used for any part of the ship building process," Dkt. No. 88 Ex. 6, and screenshots from an archived version of Storylines's website explaining that the initial deposit and milestone funds are held in escrow for the duration of the cruise ship's construction. *Id.* Ex. 4. A contract need not be entirely free from doubt for a court to order specific performance. *See Regal RealSource LLC v. Enlaw LLC*, 554 P.3d 1112, 1125 (Utah App. 2024). But this contract, even with Schulz's additional evidence, is insufficient for the court to create an appropriate order for specific performance.[4]

The court therefore overrules Schulz's fifth objection.

**CONCLUSION AND ORDER**

For the above stated reasons, the court orders as follows:

1) The court OVERRULES Schulz's objections to the Report and Recommendation. Dkt. No. 142.
2) The court ADOPTS the Report and Recommendation. Dkt. No. 141.

---

[4] Although the archived website states that all funds would be held in "secure US based escrow," no terms govern the creation, maintenance, or release of funds. Dkt. No. 88 Ex. 4. On the minimal information available, the court concludes that it is unable to fashion an acceptable order of specific performance.

3) The court GRANTS Storylines's motion for extension of time *nunc pro tunc*. Dkt. No. 145.

4) The court GRANTS Storylines's motion for summary judgment. Dkt. No. 131.

5) The court DENIES Schulz's motion for summary judgment. Dkt. No. 130.

DATED September 22, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Court Judge
District of Utah